UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO.: 6:22-cv-00299-DAE |
| LZLABS GMBH, and TEXAS WORMHOLE, LLC, | § § § | |
| *Defendants.* | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTION FROM IBM'S NOTICES OF DEPOSITION AND FOR ENTRY OF A MODIFIED DOCKET CONTROL ORDER, AND RESPONSE TO IBM'S CROSS-MOTION TO COMPEL DEPOSITIONS[1]**

---

[1] Defendants are filing their Reply and Response today because Good Friday, March 29, 2024, was a "legal holiday" for purposes of calculating deadlines pursuant to Federal Rule of Civil Procedure 6. *See* Fed. R. Civ. P. 6(a)(6)(C), https://comptroller.texas.gov/about/holidays.php, s*ee also Barrera v. Allstate Ins. Co.*, No. DR-16-CV-0037-AM-VRG, 2017 WL 3274469, at *5 (W.D. Tex. Mar. 6, 2017).

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................... 4

    I.      The Court must protect Defendants from IBM's ineffective, oppressive, and unduly burdensome notices of deposition.................................................. 4

          A.   IBM has not met its burden to show that John Moores, Keith Rastall, Christian Wehrli, Brad Taylor, and Roger Bowler are officers, directors, or managing agents of the Defendants....................................... 4

          B.   IBM's intent to depose all of LzLabs's senior management immediately before the UK trial would be oppressive and unduly burdensome. .............................................................................................. 7

    II.     IBM's own recent actions have guaranteed discovery cannot be completed by May 1, 2024, warranting a six-month extension................................. 9

CONCLUSION............................................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Agilysis, Inc. v. Hall,*
   2019 WL 3283173 (N.D. Ga. May 29, 2019) ...................................................... 7

*Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.,*
   No. 3:13-CV-1196, 2017 WL 11684607 (M.D. Tenn. Feb. 7, 2017) ................................. 2

*Kas v. Mercedes-Benz USA, LLC,*
   2012 WL 13027567 (C.D. Cal. May 23, 2012) ...................................................... 7

*Nat'l Rifle Assoc. of Am. v. Ackerman McQueen Inc.,*
   No. 3:22-cv-1944-G (BT), 2023 WL 9181587, at *3 (N.D. Tex. June 14, 2023) .............. 4

*Petrobras Am., Inc. v. Vicinay Cadenas, S.A.,*
   No. H-12-888, 2017 WL 6462402 (S.D. Tex. Sept. 7, 2017) ............................................ 5

*Sparling v. Doyle¸*
   No. EP-13-CV-323-DCG, 2015 WL 11570979 (W.D. Tex. Jan. 9. 2015) ........................ 5

IBM's accusations that Defendants are playing games and improperly refusing to produce their witnesses for deposition prior to the current May 1, 2024 discovery deadline are not only baseless, given that Defendants properly moved for protection from IBM's legally defective, oppressive, and unduly burdensome notices of deposition, but also undermined by IBM's own position: **IBM is refusing to produce its witnesses for deposition, as IBM corporate representatives or individuals (when overlapping), unless and until Defendants concede on IBM's improper objections or refusals concerning LzLabs's 30(b)(6) deposition topics**. Ex. 11. This confirms what Defendants have demonstrated in their Motion. Given the status of the development of the case, IBM knows it is impossible to complete discovery by May 1, it knows its last-minute announcement of its plan to take at least 26 depositions in six weeks is not and never was feasible, and it ensures that the schedule upon which it claims to be insisting cannot work because, among many other reasons, IBM is not willing to present its own witnesses absent further Court intervention on all of its various objections.

In reality, without any prior discussion on the subject, IBM purported to notice the depositions of many individuals who are not Defendants' officers, directors, or managing agents. IBM did so either because it had forgotten the basic legal standard (which it now admits to be the standard in its briefing) or because it wanted to try to create the appearance of genuinely asking for all of these depositions before the current fact discovery cutoff. The prior explanation is implausible, given that IBM recently litigated the exact question at issue here—*i.e.*, whether it could compel a deposition of a person who was not a managing agent and therefore not subject to

deposition by notice. IBM lost its motion to compel.[2] Notably, IBM does not dispute the applicability of that legal standard in its Response and Cross-Motion. In any event, it was either IBM's erroneous belief or tactic—not any misconduct or gamesmanship by the Defendants or the undersigned—that led IBM to conclude it would wait until February 27, 2024, to send Defendants an email attaching 17 notices of deposition, ten of which were "prioritized." IBM's claim it was supposedly misled by Defendants' initial disclosures again conflicts with its conduct. Several of the depositions IBM purported to notice were not even included in Defendants' initial disclosures (*i.e.*, Chris Palmer, John Moores, and Brad Taylor). The case law makes clear that Defendants' listing of counsel as a contact for the others is appropriate and not tantamount to saying a witness is an officer, director, or managing agent of a party.

IBM also seeks to depose LzLabs, as well as its CEO Thilo Rockmann, Executive Chairman Mark Cresswell, CTO Jan Jaeger, and indirect owner John Moores, all immediately before the start of the trial of the parallel UK litigation IBM commences. As Mr. Rockmann explained in his declaration, and unlike IBM executive Mark Anzani, Mr. Cresswell, Mr. Moores, and Mr. Rockmann have been sued in England in their personal capacities. Rockmann Decl. ¶ 14. Their need to spend significant time preparing the defense of not only LzLabs, but also ***themselves personally***, is obvious and of IBM's making. And, the disruption to those preparations that would result from requiring ***all*** of them—as well Mr. Jaeger, who while not personally a defendant in the UK case is providing input and instruction for the defense of the UK proceeding—to

---

[2] *See Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2017 WL 11684607, at *4 (M.D. Tenn. Feb. 7, 2017) (denying IBM's motion to compel the deposition of a Japan-based former executive of the plaintiff, Bridgestone, because he was not a managing agent of Bridgestone).

simultaneously or within short succession of each other spend the significant time necessary to prepare for their depositions in ***this*** case is equally apparent.

IBM's Response and Cross-Motion largely ignores this substantial burden that Mr. Rockmann details at length in his declaration, instead accusing Defendants of gamesmanship in agreeing to the current scheduling order and now supposedly using the UK trial as an "excuse" to avoid giving deposition testimony and "derail" this case to somehow guarantee it will go after the UK case. Resp. at 3. IBM is wrong: first, as detailed in Defendants' Motion, IBM's prior inaction with respect to discussing the previous schedule extension has resulted in at least two months' worth of unnecessary delay to this case. Second, IBM could have sought to depose any number of witnesses before the UK pre-trial and trial commencement, including various individuals (such as John Moores, Chris Palmer, Adrian Hudson, and Chris Ryan[3]) who reside in the United States, but instead chose to wait before taking ***any*** depositions. That is not Defendants' fault, and when Defendants agreed to the current scheduling order they (a) never represented that was the last schedule extension that will ever be needed in this case (nor do Defendants make such a representation now), and (b) frankly did not anticipate that at this point in the case IBM would have chosen to take ***zero*** depositions. Third, by any measure, this case is simply not ready for discovery to close on May 1: since Defendants filed their motion for protection and for a new scheduling order, IBM supplemented their initial disclosures to add new witnesses, and for the first time served a privilege log—indicating that IBM is fully withholding nearly 4,000 documents

---

[3] IBM issued a subpoena seeking the documents and deposition testimony of Chris Ryan, an outside attorney for LzLabs, including in this lawsuit, even though Mr. Ryan was not included in IBM's list of 26 requested depositions. Defendants therefore conclude that IBM likely requested Mr. Ryan's documents and testimony now as a bizarre form of retaliation against the Defendants for informing IBM that many of its deposition notices were ineffective.

due to a claim of privilege. Issues surrounding that privilege log will need to be sorted out, and there is no chance that can or will occur on the current schedule or close to it.

The root cause of the parties' current dispute is a schedule that very clearly does not fit the status of the case, even though both sides have been working hard under it. Defendants respectfully submit that the Court should grant Defendants' motion for protection and for a protective order, deny IBM's motion to compel, extend the current case schedule by six months as set forth in Defendants' proposed docket control order, and allow the parties to proceed with discovery in accordance with those orders.

## **ARGUMENT**

**I.      The Court must protect Defendants from IBM's ineffective, oppressive, and unduly burdensome notices of deposition.**

**A.      IBM has not met its burden to show that John Moores, Keith Rastall, Christian Wehrli, Brad Taylor, and Roger Bowler are officers, directors, or managing agents of the Defendants.**

On February 27, 2024, IBM purported to serve on Defendants 17 notices of deposition, seeking thereby to depose Defendants' former employees, third parties, current employees, and its senior management. Motion Ex. 6. Of those 17 notices, IBM informed Defendants that it intended to prioritize ten of them while the Court determines whether IBM may take at least 26 depositions prior to the current May 1, 2024 discovery cut-off. *Id.* Of this "prioritized" set of depositions, IBM's attempt to notice the depositions of John Moores, Keith Rastall, Brad Taylor, Christian Wehrli, and Roger Bowler is ineffective as these individuals are not subject to deposition by notice.

As Defendants demonstrated in their motion for protection, only their current officers, directors, and managing agents are subject to deposition by notice. *See Nat'l Rifle Assoc. of Am. v. Ackerman McQueen Inc.*, No. 3:22-cv-1944-G (BT), 2023 WL 9181587, at *3 (N.D. Tex. June

14, 2023). As Defendants pointed out in their motion for protection, to determine whether an individual is a "managing agent" of a business entity, courts analyze multiple factors such as

> (1) Whether the agent's interests are identified with those of the principal; (2) the nature and extent of the agent's functions, responsibilities, and duties; (3) the extent of the agent's power to exercise judgment and discretion; and (4) whether any person or persons higher in authority than the deponent were in charge of the particular matter or possessed all of the necessary information.

*Sparling v. Doyle¸* No. EP-13-CV-323-DCG, 2015 WL 11570979, at *1 (W.D. Tex. Jan. 9. 2015). And as another court explained **to IBM** at length the last time it attempted (and failed) to compel the deposition of a former employee of its counterparty, "[m]ost courts consider the individual's position **at the time of the deposition** for purposes of the managing agent inquiry. For this reason, former employees generally do not qualify as managing agents." *Int'l Bus. Machines Corp.*, 2017 WL 11684607, at *4 (emphasis added) (cleaned up) (collecting cases). *See also Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, No. H-12-888, 2017 WL 6462402, at *1 (S.D. Tex. Sept. 7, 2017) ("A potential deponent's status as managing agent is generally determined as of the time of the deposition, not as of the time when the activities disputed in the litigation occurred . . . . It is undisputed that none of the Witnesses are currently employed by [defendant] or were employed by [defendant] at the time their depositions were noticed. . . . Thus, the Witnesses were not managing agents at the time their depositions were noticed.") Applying this standard, IBM has failed to establish and cannot establish that Moores, Rastall, Wehrli, Taylor, or Bowler are "managing agents" subject to deposition by notice.

    In its Response and Cross-Motion, IBM unpersuasively argues for why each of the individuals whose deposition it has purported to notice—including former employees and never-employees—is nevertheless an officer, director, or managing agent of the Defendants. For example, IBM claims that John Moores, who has an indirect ownership interest in the Defendants,

is not a third party and in any event is a managing agent of the Defendants because he previously "led changes to the LzLabs 'Code of Conduct'" and "even has an LzLabs domain email address that he uses to perform work at LzLabs." Resp. and Cross Mot. at 6. But, again, Moores does not have any employment relationship with the Defendants, nor has he ever had such a relationship. *See* Rockmann Decl. ¶ 5.

Similarly, Rastall and Wehrli are not Defendants' employees. Rastall is an employee of *Winsopia*.[4] When Rastall rejoined Winsopia in November 2020, he worked on customer migration projects, but is currently not assigned any such projects. Rockmann Decl. ¶ 10. And Wehrli is a *former* employee of LzLabs. *Id.* ¶ 6. IBM acknowledges he is not a managing agent of LzLabs— LzLabs informed IBM in July 2023 that Wehrli had left the company, *see* Motion for Protection Ex. 7 ¶ 6—but claims that Defendants somehow misrepresented his status by including Wehrli (and others) in their initial disclosures and therefore must produce him for deposition. IBM's argument is entirely unmeritorious. As a practical matter, Defendants have no power to force a former employee (in Switzerland) to sit for deposition. Second, as IBM acknowledges, regardless of whether a current employee is included in Defendants' initial disclosures, ethical obligations would have prevented IBM from contacting that person directly without the undersigned's approval. IBM therefore in any event should have first reached out to the undersigned, confirmed at that time whether Wehrli (or others) were the Defendants' managing agents, and if not, requested contact information sufficient to serve Wehrli (or others) with a subpoena or letter of request pursuant to the Hague Convention. Neither case IBM cites in its Response and Cross-Motion

---

[4] Rastall's reference to LzLabs in his LinkedIn profile is erroneous, and in any event is irrelevant to determining what his current responsibilities are and whether he is a managing agent of the Defendants. Indeed, in his declaration Mr. Rockmann accurately described Mr. Rastall's current role and area of responsibility, as well as his history with Winsopia.

changes that conclusion. Resp. and Cross-Mot. at 8, *see Kas v. Mercedes-Benz USA, LLC*, 2012 WL 13027567, at *1-2 (C.D. Cal. May 23, 2012) (the individual in question was a putative client and potential named class member, and the plaintiff had already agreed to accept a notice of deposition for that individual), *Agilysis, Inc. v. Hall*, 2019 WL 3283173, at *19 (N.D. Ga. May 29, 2019) (plaintiff had failed to timely inform the defendant that two former employees had left the company).

Finally, as to Mr. Taylor and Mr. Bowler, both of whom are current employees for LzLabs, IBM has failed to establish they are managing agents of the Defendants. Indeed, while IBM points out that they previously appeared as "team leads" in certain DR tickets in the past and that, in the case of Mr. Taylor, he wrote a test plan in 2018, *see* Resp. and Cross-Mot. at 7-8, this does not establish they ***currently*** have power to exercise significant discretion and judgment (nor that they ever had that power). Rather, as Mr. Rockmann pointed out in his declaration, while they were ***at times*** team leads for the respective portions of the SDM on which they were working, they have never had managerial roles, have always reported to others, and have never been, as such, ultimately responsible for the development of the SDM, which weighs against a finding that they are currently managing agents of LzLabs. Rockmann Decl. ¶ 12.

**B.     IBM's intent to depose all of LzLabs's senior management immediately before the UK trial would be oppressive and unduly burdensome.**

IBM's attempt to depose LzLabs CEO Thilo Rockmann, Executive Chairman Mark Cresswell, and indirect owner John Moores—all of whom IBM has made individual defendants in their personal capacities in the imminent trial in the UK—immediately before the UK trial begins would be oppressive and unduly burdensome. As explained in Mr. Rockmann's declaration and in LzLabs's motion for protection, both LzLabs and the named defendants must spend essentially around-the-clock time preparing for that trial and helping to manage the litigation brought against

them. Motion at 9-10, Rockmann Decl. ¶¶ 13-14. Because IBM is attempting to depose all of them within very close proximity of each other, and because adequately preparing for their depositions here would require significant preparation time, diverting LzLabs's senior management from their UK trial preparations all at once would severely disrupt those efforts. *Id.* Likewise, Mr. Jaeger, along with Mr. Rockmann pursuant to the applicable confidentiality rules in the UK case, is providing input and instructions for the defense of the UK proceedings. *Id.*

IBM largely ignores that burden, instead resorting to accusing Defendants of misconduct or gamesmanship. That is wrong for multiple reasons. First, it is IBM who chose to file the UK lawsuit first and then this lawsuit several months later, and cannot be heard to complain that the UK trial will begin first. Second, as detailed further below, IBM refuses to produce its own corporate representatives and corresponding individual witnesses (absent Defendants agreeing up-front to IBM's myriad objections to the noticed topics). There are no "games" to play; the case simply is not in a stage to proceed before the Court addresses outstanding issues with both parties' respective objections and the like. Finally, while it certainly is true the most recent scheduling order was an agreed order, Defendants (a) were clear with IBM on their view that a longer extension was warranted, (b) never represented it would be the last extension that would be needed, and indeed do not make that representation now, and (c) could not possibly have known that IBM would have taken ***zero*** depositions at this point—IBM has previously served several deposition subpoenas on third parties but then failed to actually take those depositions, *see* Motion at 5 n.5— and instead seek to take ***all*** of its allotted depositions in the six-week period immediately prior to the UK trial. The Court should reject IBM's attempt to interfere with LzLabs's preparations for the trial of the parallel UK litigation filed at IBM's behest.

**II.     IBM's own recent actions have guaranteed discovery cannot be completed by May 1, 2024, re-confirming the need for the extension Defendants have requested.**

Given all of the foregoing, IBM's plan to take ten depositions in the six weeks immediately preceding the UK trial—let alone the 17 depositions it purported to notice in February 2024 or the 26 depositions it has requested from the Court—is not and never has been feasible. And to the extent there was any question on this point, IBM's actions in the last week alone have put any possible remaining doubt to bed. First, after serving its second amended initial disclosures to include additional fact witnesses, Ex. 12, IBM "offered" to present several individuals for deposition in their capacities as corporate representatives for some of the topics in LzLabs's 30(b)(6) notice of deposition. Exs. 11, 13. However, as stated in those emails, IBM is now taking the position that it will not allow those depositions to proceed until IBM's objections to those 30(b)(6) topics are either resolved by the Court or simply accepted in their entirety by the Defendants. That is, IBM refuses to proceed with the agreed-upon portions of its Rule 30(b)(6) deposition and resolve any remaining issues afterwards. Ex. 11 (stating that IBM will "only be putting up [its corporate representatives for deposition] once. . . . Defendants may not proceed with [those depositions] while 'reserving their objections.'") Given that position, IBM does not intend to allow Defendants to depose its representatives prior to May 1, 2024, ***even in their individual capacities*** unless Defendants simply agree with IBM's objections. Given IBM is taking that position for "all of IBM's corporate representatives," and given that IBM is either improperly objecting to significant portions of LzLabs's deposition topics or refusing to designate a corporate representative for numerous topics altogether, Ex. 14, it will take time and, almost certainly (and regrettably) further motion practice to resolve those issues. As IBM well knows, that process will not be completed prior to the current May 1 discovery deadline. Likewise, LzLabs has numerous objections to IBM's intended 30(b)(6) deposition topics. Ex. 15. Given IBM's established view,

the deposition of LzLabs's corporate representative(s) likewise cannot be completed prior to May 1, 2024 unless IBM simply agrees with LzLabs's objections to its deposition topics (which Defendants anticipate will not happen). In short, by taking this position with respect to the depositions of its own witnesses, ***IBM has guaranteed that the May 1, 2024 discovery deadline cannot be met***.

Second, on April 1, 2024, IBM served Defendants with a 95-page privilege log for the very first time in this case. Ex. 16.  IBM newly informed Defendants that it is apparently withholding nearly 4,000 documents in their entirety pursuant to a claim of privilege. Even in the very brief amount of time Defendants have had thus far to review this privilege log, it is apparent multiple issues will need to be resolved: for example, IBM does not disclose which of the individuals on its privilege log is an attorney, and IBM is claiming ***attorney-client privilege*** over multiple communications between ***only*** Mark Anzani and Robert Soprano, Defendants' former employee. *See id.* at 51, Log Number 2319, 88, Log Number 3616. Determining the propriety of these and potentially other privilege log entries will take time and possibly further motion practice.

## <u>CONCLUSION</u>

It is facially obvious that the current May 1, 2024 deadline is and has long been untenable. IBM's own very recent actions confirm the point. IBM's claims of gamesmanship and professions of outrage are seemingly insincere and definitely incorrect. The Court should grant Defendants' motion for protection from IBM's notices of deposition are either ineffective or oppressive and unduly burdensome, deny IBM's motion to compel, and extend the current case schedule by six months to permit the parties the time they clearly need to engage in the discovery process in accordance with current deadlines are not workable.

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:      /s/  *Chris Reynolds*
         **Chris Reynolds** (TBN 16801900)
         creynolds@reynoldsfrizzell.com
         **Brandon Allen** (TBN 24009353)
         ballen@reynoldsfrizzell.com
         **Jim Weiss** (TBN 24084005)
         jweiss@reynoldsfrizzell.com
         **Elizabeth Wilkerson** (TBN 24130917)
         ewilkerson@reynoldsfrizzell.com
         **Adi Sirkes** (TBN 24117059)
         asirkes@reynoldsfrizzell.com
         **Mason Malone** (TBN 24125149)
         mmalone@reynoldsfrizzell.com
         1100 Louisiana, Suite 3500
         Houston, TX 77002
         Telephone: (713)485-7200

         **RYANIPLAW, P.C.**
         **Christopher V. Ryan** (TBN 24037412)
         chris.ryan@ryaniplaw.com
         1250 Capital of Texas Highway South
         Building 3, Suite 400
         Austin, Texas 78746
         Phone: (512) 970-7331

**ATTORNEYS FOR DEFENDANTS
LZLABS GMBH AND TEXAS WORMHOLE,
LLC**

## CERTIFICATE OF SERVICE

I certify that on this 1st day of April, 2024, I sent a true and correct copy of the Court's orders.foregoing document to all counsel of record by email.

                    /s/ Adi Sirkes
                    Adi Sirkes

11