# EXHIBIT 15

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LZLABS GMBH, and TEXAS WORMHOLE, LLC,<br><br>Defendants. | Civil Action No. 6:22-cv-00299<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT LZLABS GMBH'S OBJECTIONS
TO IBM'S RULE 30(b)(6) DEPOSITION NOTICE**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules for the United States District Court for the Western District of Texas (the "Local Rules"), Defendant LzLabs GmbH ("LzLabs") asserts the following objections to Plaintiff International Business Machines Corporation's ("IBM") Rule 30(b)(6) deposition notice originally served November 28, 2023 and re-urged on February 27, 2024. LzLabs reserves the right to supplement or amend these objections and responses to the extent allowed by the Federal Rules, the Local Rules, or any other rule.

Dated: April 1, 2024

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:  */s/ Chris Reynolds*
**Chris Reynolds** (TBN 16801900)
creynolds@reynoldsfrizzell.com
**Brandon Allen** (TBN 24009353)
ballen@reynoldsfrizzell.com
**Adi Sirkes** (TBN 24117059)
asirkes@reynoldsfrizzell.com
**Elizabeth Wilkerson** (TBN 24130917)
ewilkerson@reynoldsfrizzell.com
**Jim Weiss** (TBN 24084605)
jweiss@reynoldsfrizzell.com
1100 Louisiana, Suite 3500
Houston, TX 77002
Telephone:  (713) 485-7200
Facsimile:  (713) 485-7250

and

**RYANIPLAW, P.C.**

**Christopher V. Ryan** (TBN 24037412)
chris.ryan@ryaniplaw.com
1250 Capital of Texas Highway South
Building 3, Suite 400
Austin, TX 78746
Telephone:  (512) 970-7331

**ATTORNEYS FOR DEFENDANT
LZLABS GMBH**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being served via email on all counsel of record on this 1st of April 2024.

*/s/ Elizabeth Wilkerson*
*Counsel for Defendants*

2

## LZLABS'S OBJECTIONS TO IBM'S DEFINITIONS
## & LZLABS'S GLOBAL OBJECTIONS

1.     The responses and objections set forth herein are based on information reasonably available to LzLabs upon diligent inquiry and by reference to information currently available.

2.     The timing of LzLabs's production of one or more witnesses as set forth herein is made subject to LzLabs's pending motion for protective order concerning this deposition, which is incorporated by reference.

3.     LzLabs objects to the Definitions and the Topics to the extent that they call for information that contains or reflects privileged attorney-client communications or information that is protected by the work-product doctrine, common interest privilege, or any other privilege or exemption from discovery under the Federal Rules of Civil Procedure or any other rule, statute or law, including common law and the laws of Switzerland, England, and any other European jurisdiction that may apply.

4.     LzLabs objects to the Definitions and the Topics to the extent that they request information that is proprietary, trade secret, or confidential business information, and LzLabs asserts each and every applicable privilege and rule governing confidentiality of such information.  Such information will be provided with confidentiality designations under the Protective Order entered in the Lawsuit [Dkt. #128].  LzLabs does not intend to waive any such protections or privileges or to provide any information that is subject to any such protections or any such privilege.  Any inadvertent disclosure of privileged or otherwise protected information by LzLabs shall not be considered a waiver of any privilege or protection.

5.     LzLabs objects to the Definitions and the Topics to the extent they seek disclosure of information the collection, handling, or provision of which would violate other statutorily or judicially recognized protections, including Articles 271 and 273 of the Swiss Criminal Code or other foreign law.

6.     LzLabs objects to the Definitions and the Topics to the extent they seek information subject to third-party confidentiality or non-disclosure agreements, or other confidential, sensitive, and/or proprietary third-party information.  Such information will be provided with confidentiality designations under the Protective Order, upon procuring compliance with the provisions of third-party contracts concerning confidentiality and non-disclosure, and subject to the contractual rights of third parties to seek protection of their confidential information in this action.  Statements in these Responses indicating intent to provide information related to third parties are subject to and qualified by this objection.

7.     LzLabs objects to the Definitions and the Topics to the extent that they seek to expand the scope and obligations of discovery and supplementation beyond those provided for in the Federal Rules of Civil Procedure.

8.     LzLabs objects to the Definitions and the Topics to the extent they would include any entity or person beyond LzLabs in the definition of "You" or "Your." The definition provided causes the Topics to contravene the requirements of Rule 30(b)(6), to be overbroad in

a manner that would impose burdens that are disproportionate and unduly burdensome, to be vague, and to encompass information outside the possession, custody, and control of LzLabs.

9.      LzLabs objects to the definition of "Winsopia" as overbroad, in a manner that causes the Topics to impose burdens that are disproportionate and unduly burdensome, to be vague, and to encompass information outside the possession, custody and control of LzLabs GmbH.   The numbered responses below incorporate a definition of "Winsopia" meaning "Winsopia Ltd."

10.     LzLabs objects to the Definitions and the Topics as they concern the defined phrase "IBM's Mainframe System." LzLabs objects to the phrase, as defined, as overbroad and not proportional to the needs of this case because it seeks information that would encompass all IBM mainframe computers and software, rather than what was licensed to Winsopia and at issue in the Action. Subject to these objections, LzLabs will respond, to the extent it is reasonably able and required under Rule 30(b)(6), concerning efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

11.     LzLabs objects to the definition of "Accused Instrumentality" as vague and overbroad because it includes apparatuses, products, devices, processes, methods, or acts that (1) are not part of but merely marketed "in conjunction with" the Software Defined Mainframe ("SDM") and (2) are not alleged by IBM's April 27, 2023 Infringement Contentions to fall within the scope of any claim of the Patents-in-Suit.  IBM's infringement assertions appear to concern aspects of the execution engine of the SDM, and aspects of the load module compiler.  The contentions allege infringement by operation of the execution engine of the SDM, which forms part of "LzBatch" and/or its operation in combination with the operation of the load module compiler. IBM has not alleged infringement by the online interface, "LzOnline," by database access subsystems "LzRelational," "LzHierarchical," "LzWorkbench," or by "LzVault," "LzDiscover," and "LzEnable."

-      LzDiscover is not software and is not a part of the SDM.  It is a marketing name that relates to persons determining what types of software a customer is using.

-      LzEnable is not software and is not a part of the SDM. It is a marketing name that relates generally to persons assisting customers with the process of performing a system migration.

-      LzVault is the name given to certain security software that is not implicated in the patent infringement contentions, nor does it appear to have been implicated in IBM's other allegations in this case.

-      LzWorkbench is a development environment to allow customers to develop applications on SDM. It is not implicated in the patent infringement contentions, nor does it appear to have been implicated by IBM's other allegations in the case.

-        LzRelational and LzHierarchical relate to database functionality which is based on the PostGreSQL database.

-        LzOnline relates to support for the LzLabs online transactional environment used by customer applications that perform online transactions. LzOnline is not implicated in the patent infringement contentions.

-        LzBatch relates to support for the batch execution of customer programs. A subset of LzBatch is the execution environment that appears to be accused in the case.

LzLabs further objects to the definition of "Accused Instrumentality" as vague and overbroad because it includes apparatuses, products, devices, processes, methods, or acts that IBM contends incorporate or make use of its trade secrets as purportedly described in IBM's Complaint, when IBM's Complaint does not actually identify any trade secrets, and IBM has thus far failed to identify the trade secrets it alleges were misappropriated by Defendants. The SDM comprises the following components, runtimes, and utilities:

(1) LzOnline; (2) LzHierarchical; (3) LzRelational; (4) LzBatch; (5) SDM Legacy PL/1 Language Run-Time Environment; (6) SDM Legacy Cobol Language Run-Time Environment; (7) SDM Language Environment Run-Time; (8) SDM utilities; (9) SDM Core; (10) LzVault; (11) SDM middleware components; and (12) User interface/management console.

The only portions of the system that IBM appears to reference in its Complaint are items (1), (2), (4), (5), (6), (7), and (9). LzLabs will interpret the term "Accused Instrumentality" in the Topics to refer to the applicable portions of the SDM.

12.    LzLabs objects to the Definitions and the Topics to the extent they call for a premature disclosure of expert opinions.

13.    LzLabs objects to the definition of "Communication" to the extent it exceeds the scope of the obligations imposed by the Federal Rules of Civil Procedure.

14.    LzLabs objects to the definition of "related" or "relating" because it is overbroad. For example, those terms as defined can mean "tending to support or refute" and "referring . . . indirectly to, in any way, the particular subject matter identified," which cause them to encompass redundant documents, information, or instances or those referring only incidentally or tangentially to a subject matter more fully addressed by other documents. Considering such terms with their full scope would lead to burdens that are undue and disproportionate to the needs of the case.

15.    Statements by LzLabs in these Responses of intent to produce a witness to testify concerning a topic or event do not signify a representation, confirmation, or belief that it has knowledge concerning the topic or event, that such an event occurred, or that such information is relevant or properly discoverable.

16.    LzLabs objects to the Definitions and the Topics to the extent they seek information the provision of which would violate court orders and undertakings in the action in the High Court of Justice, Business and 4 Property Courts of England and Wales, Technology and

Construction Court (QBD) commenced by IBM United Kingdom Limited against LzLabs GmbH, Winsopia Limited, LzLabs Limited, Mark Jonathan Cresswell, Thilo Rockmann, and John Moores, Claim No: HT-2021-000363 (the "English Action"), including the applicable confidentiality order in that case, and would violate English law, including the prohibition on collateral use of documents under the English Civil Procedure Rules (CPR 31.22(1)). LzLabs objects to the extent they seek information in the public domain or in IBM's possession, custody or control that can be obtained with no greater burden by IBM, including because IBM can obtain those materials that can be disclosed through its own subsidiary that is a party to the English Action.

## LZLABS'S OBJECTIONS TO IBM'S TOPICS FOR EXAMINATION

**1.      The Development process for the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning "the Development process for the Accused Instrumentality." Hundreds of thousands of documents have been produced on this Topic, for example. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the systems and processes put in place to govern efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the IBM Customer Agreement ("ICA") in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

**2.      The operation and implementation of the Accused Instrumentality, including the source code for the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning the "operation and implementation" of the Accused Instrumentality, including its source code or the substantial detail reflected in technical documentation that has been produced. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning operation and implementation of the Accused Instrumentality.

3.      **Any testing or analysis of IBM's Mainframe System (in whole or in part), whether by You or by a third party, that contributed to the development of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning the acts of "testing or analysis" encompassed by this Topic. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

4.      **Efforts to understand the operation of any aspect of IBM's Mainframe System described in IBM's September 22, 2023 Second Amended Preliminary Identification of Trade Secrets.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any "efforts" encompassed by this Topic. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. LzLabs further objects to this request given that, because IBM designated the pertinent parts of IBM's September 22, 2023 Second Amended Preliminary Identification of Trade Secrets under the Protective Order as CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, IBM has precluded LzLabs from seeing the document or preparing to testify concerning it. Preparing to provide such testimony in response to this Topic would violate

the Court's Protective Order. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

**5.      Efforts to understand the object-code level operation of IBM's runtime routines and associated data structures, including how those routines and data structures interact with an IBM Customer Application.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery concerning software or other material beyond what was licensed to Winsopia and at issue in the litigation or concerning every factual item about any "efforts" encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

**6.      Any reverse engineering, reverse assembling, breakdown, decompilation, or deconstruction of IBM's Mainframe System (in whole or in part), including any such activities prior to August 15, 2013.**

**Objection and Response**:

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. LzLabs objects to the phrases "reverse engineering," "reverse assembling," "breakdown," "decompilation," or "deconstruction" as calling for a legal conclusion and a premature disclosure of an expert opinion.  LzLabs objects to the Topic because it does not "describe with reasonable

particularity the matter for examination," as required by Rule 30(b)(6). Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

7.     **Your use, study, or analysis of compiler listings, or other compiler output files, that were generated using IBM's Mainframe System to develop the Accused Instrumentality, including any use, study, or analysis by Winsopia, Texas Wormhole, or any of Your affiliates.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

8.     **The development, operation, and use of tools to analyze, modify, prepare for Migration, or Migrate customer applications, including but not limited to CPX.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, any "tool" used to "analyze, modify, prepare for Migration, or Migrate" a

customer application, which would include tools developed and used by third parties in connection with third-party applications and in scenarios having nothing to do with the claims and defenses in this action (or even the Accused Instrumentality). LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the development, operation, and use of CPX.

**9.     The process by which an IBM Customer Application is Migrated.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning the migration process, when each migration concerns a different third-party application and thus different details and information that is solely in the possession of third parties and/or concerns only the third-party application or its environment and does not relate to the claims and defenses in this litigation. Moreover, LzLabs has produced documents demonstrating the nature of, and significant levels of details concerning, the migration process. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail concerning the general process applied by LzLabs for migrating a customer application to the Accused Instrumentality.

**10.     Each instance in which You attempted to Migrate a customer application and the changes that were made to that application for Migration.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning every instance of migration to the Accused Instrumentality, when each migration concerns a different third-party application and thus different details and information that is solely in the possession of third parties and/or concerns only the third-party application or its environment and does not relate to the claims and defenses in this litigation. Moreover, LzLabs has produced documents demonstrating the nature of, and

11

significant levels of details concerning, the migration process. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify as indicated in response to Topic 9 and is willing to meet and confer concerning this Topic.

11.      **Any challenges faced by You or Your customers in Migrating customer applications, including any unsuccessful Migrations.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6) and because the terms "challenges" and "unsuccessful" are vague and ambiguous. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning every instance in which a migration to the Accused Instrumentality required participants to work through an issue, when each migration concerns a different third-party application and thus different details and information that is solely in the possession of third parties and/or concerns only the third-party application or its environment and does not relate to the claims and defenses in this litigation. Moreover, LzLabs has produced documents demonstrating the nature of, and significant levels of details concerning, the migration process. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify as indicated in response to Topic 9 and concerning the general nature of issues that are typically encountered during the migration process.  LzLabs is willing to meet and confer concerning this Topic.

12.      **Development of the Accused Instrumentality in the United States, including the specific development work undertaken in the United States, when that work occurred, and the individuals involved with that work.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning development activity relating to the Accused Instrumentality in the United States.  A substantial volume of documents concerning development

activity in the United States has been produced. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning general development projects in relation to the Accused Instrumentality undertaken in the United States and associated time periods and individuals.

**13.    Each instance that the Accused Instrumentality was used in the United States or stored on computer storage in the United States, including the date of each such use or storage, the circumstances of each such use or storage, and the identities of the individuals involved in such use or storage.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to this Topic as duplicative of Topic 12 insofar as it is directed at contract developers of Texas Wormhole and incorporates by reference its objections and responses to Topic 12. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any instance of use or storage of the Accused Instrumentality in the United States by third parties. A substantial volume of documents concerning activity in the United States in relation to the Accused Instrumentality has been produced. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the general projects and policies in relation to the Accused Instrumentality undertaken or implemented in the United States by LzLabs and associated time periods and individuals.

**14.    The role or involvement of any third party or customer in the development of the Accused Instrumentality, including the role or involvement of any third party or customer referenced in Your response to IBM's Interrogatory No. 9.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's

possession, custody, or control. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning the "involvement" of any third party in the development of the Accused Instrumentality, which effectively asks for every detail concerning development when a third party interaction is implicated and thus information both solely in the possession of third parties and well beyond what is related to the claims or defenses in this litigation. Moreover, LzLabs has already produced substantial information about the development of the SDM.  Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail concerning the general roles of third parties in the development process for the SDM.

15.     **Any part of IBM's Mainframe System that LzLabs has ever had in its possession custody, or control, how LzLabs acquired each such part, and LzLabs' use of each such part.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks testimony regarding, without limitation, every factual item concerning every instance of work in relation to the mainframe in Winsopia's possession, when LzLabs has produced a substantial volume of documents on that topic. LzLabs further objects insofar as it has already explained in connection with RFP 58 that LzLabs does not have any mainframe or system on which it operates mainframe programs licensed from IBM aside from the mainframe in Winsopia's possession. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any IBM mainframe hardware or licensed ICA programs LzLabs or Winsopia has ever had in their possession, custody, or control; how LzLabs or Winsopia acquired the same; and LzLabs's or Winsopia's general use of each such part.

16.     **The identity, intended use, and development of any potential products or projects in development by You or on Your behalf prior to August 15, 2013.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's

possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any project or product in development before August 15, 2013, regardless of whether it has any connection to the claims or defenses in the litigation.  Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

17.    **Your efforts to understand the operation of any aspect of IBM's Mainframe System described in IBM's September 22, 2023 Second Amended Preliminary Identification of Trade Secrets, prior to August 15, 2013.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any "efforts" encompassed by this Topic. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. LzLabs further objects to this request given that, because IBM designated the pertinent parts of IBM's September 22, 2023 Second Amended Preliminary Identification of Trade Secrets under the Protective Order as CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, IBM has precluded LzLabs from seeing the document or preparing to testify concerning it. Preparing to provide such testimony in response to this Topic would violate the Court's Protective Order. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

18.    **Your efforts to understand the object-code level operation of IBM's runtime routines and associated data structures, including how those routines and data structures interact with an IBM Customer Application, prior to August 15, 2013.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery

concerning software or other material beyond what was licensed to Winsopia and at issue in the litigation or concerning every factual item about any "efforts" encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

19.    **The development, intended use, and operation of Your "Rent Control" product and/or project, including how that product or project relates to the Accused Instrumentality.** *See* **JMI0000006, JMI0000013.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the general process for development, intended use, and general method of operation of the "Rent Control" project, including how that product or project relates to the Accused Instrumentality.

20.    **Information regarding the operation and implementation of the Accused Instrumentality that You provide to customers, including product manuals, data sheets, user manuals, programming instructions, training guides, and configuration guides.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding,

16

without limitation, every factual item concerning the information provided to customers about the operation and implementation of the Accused Instrumentality. LzLabs has produced a substantial volume of material on that topic.  Subject to and without waiver of the foregoing general and specific objections, LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the systems in place for preparation of its technical documentation, including that provided to customers.

**21.     The Neon Lawsuit, including the circumstances of that lawsuit and the disposition of that lawsuit.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs objects to this Topic as irrelevant. LzLabs objects to this Topic on the grounds of vagueness as it concerns the word "circumstances." LzLabs objects to this Topic as overbroad, unduly burdensome, and not proportionate to any need in this lawsuit. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

**22.     The "zPrime" product developed by Neon Enterprise Software, LLC, including the development of that product, the relationship of that product to IBM's Mainframe System, and advertising or marketing relating to that product.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs objects to this Topic as irrelevant. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs objects to this Topic on the grounds of vagueness as it concerns the word "circumstances." LzLabs objects to this Topic as overbroad, unduly burdensome, and not proportionate to any need in this lawsuit. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

23.     **Your relationship with Neon Enterprise Software, LLC, including any of Your officers, directors, employees, partners, subsidiaries, or affiliates that used to be officers, directors, employees, partners, subsidiaries, or affiliates of Neon Enterprises Software, LLC.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to this Topic as irrelevant. LzLabs objects to this Topic on the grounds of vagueness as it concerns the word "relationship." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

24.     **Your corporate relationship with Winsopia, including:**

    a.     **Your corporate ownership of Winsopia;**

    b.     **Your ability to formulate, direct, or control Winsopia's operations, management, or policies;**

    c.     **Any shareholder meetings, board meetings, and business departments that are jointly held by You and Winsopia; and**

    d.     **The creation of Winsopia as a legal entity, including the reason why Winsopia was created as a separate entity from LzLabs.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the corporate relationship between LzLabs and Winsopia.

25.     **Reverse engineering, reverse assembling, breakdown, decompilation, or deconstruction of IBM's Mainframe System (in whole or in part) by Winsopia or at Winsopia's direction.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. LzLabs objects to the phrases "reverse engineering," "reverse assembling," "breakdown," "decompilation," or "deconstruction" as calling for a legal conclusion and a premature disclosure of an expert opinion.  LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

26.     **Winsopia's acquisition of the Winsopia Mainframe, including when it was acquired, how it was acquired, and from whom it was acquired.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning Winsopia's acquisition of the Winsopia Mainframe, including when it was acquired, how it was acquired, and from whom it was acquired.

27.     The use or analysis of the Winsopia Mainframe by Winsopia or at Winsopia's direction, including any efforts to understand the technical operation of the Winsopia Mainframe or programs that run on the Winsopia Mainframe, any debugging performed on the Winsopia Mainframe, and any testing performed on the Winsopia Mainframe.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning use or analysis of the Winsopia Mainframe by Winsopia or at Winsopia's direction.

28.     Whether Winsopia continues to possess or use the Winsopia Mainframe, and, if Winsopia continues to use the mainframe, how Winsopia continues to use the mainframe.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning Winsopia's current possession or use of the mainframe, if any.

29.     The August 15, 2013 IBM Customer Agreement between Winsopia and IBM UK, and circumstances surrounding the formation and termination of the agreement, including:

       a.     Winsopia's communications with IBM UK concerning entering into the agreement;

       b.     Winsopia's purpose in entering into the agreement;

20

      c.        **LzLabs' role in or influence on Winsopia's decision to enter into the agreement.**

      d.        **The specific ICA Programs that Winsopia licensed under the agreement;**

      e.        **Winsopia's use or analysis of the IBM programs that it licensed under the agreement;**

      f.        **The restrictions on Winsopia's use of those programs under the agreement, including the "Actions The Customer May Not Take" specified in Paragraph 4.1.3 of the agreement; and**

      g.        **The termination of the agreement.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic.  LzLabs objects to this Topic to the extent it calls for a legal conclusion and a premature disclosure of an expert opinion.  Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the August 15, 2013 IBM Customer Agreement between Winsopia and IBM UK, and circumstances surrounding the formation and termination of the agreement.

      30.     **Whether there exists any business of Winsopia that is unrelated to its analysis of IBM's Mainframe System, and if so, the nature of that business.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning whether Winsopia currently does business unrelated to the Winsopia Mainframe.

31.     **Your understanding of what aspects of IBM's Mainframe System are proprietary.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. LzLabs further objects to this Topic as overly broad, irrelevant, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery concerning IBM systems beyond what was licensed to Winsopia and at issue in this litigation. LzLabs objects to the extent this Topic calls for a legal conclusion and a premature disclosure of an expert opinion. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

32.     **The Winsopia Services Agreement referenced in Your July 6, 2023 response to IBM's Interrogatory No. 7.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. LzLabs objects to this Topic to the extent it calls for legal conclusions or premature disclosure of an expert opinion. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the circumstances surrounding the formation of the Winsopia Services Agreement referenced in LzLabs's July 6, 2023 response to IBM's Interrogatory No. 7.

33.     **Your communications with Winsopia, including those made through the Discovery Request System, concerning (a) the Accused Instrumentality, (b) IBM, (c) the Winsopia Mainframe, and/or (d) IBM's Mainframe System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrases "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every communication with Winsopia on the enumerated topics, which include LzLabs's primary product, in addition to IBM and IBM's Mainframe System. Given the nature of LzLabs's business concerning the SDM, a product designed to be compatible with customer applications that run on a mainframe, these broadly framed categories essentially touch on the majority or entirety of LzLabs's business and go well beyond what is relevant to this litigation.   LzLabs has already produced a substantial volume of communications between LzLabs and Winsopia. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the general nature of and systems implemented to facilitate and govern communications between Winsopia and LzLabs concerning the Accused Instrumentality; the Winsopia Mainframe; and efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

34.     **The Clean Room Process, including how the process was implemented, why the process was implemented, who was involved in implementing the process, and the cost of the Clean Room Process (including attorney's fees).**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the Clean Room Process, including how the process was implemented, why the process was implemented, who was involved in implementing the process, and the approximate cost of the Clean Room Process (including attorney's fees).

35. **Your policies and procedures for redacting information about IBM's Mainframe System in communications between You and Winsopia, including communications made through the Discovery Request System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning its policies and procedures relating to redaction in communications between LzLabs and Winsopia, including communications made through the Discovery Request System.

36. **The specific types of information about IBM's Mainframe System that You or anyone acting on Your behalf redacted, or attempted to redact, in communications between You and Winsopia made through the Discovery Request System, including information contained in compiler output files (*e.g.*, compiler listings and load modules) generated using IBM's Mainframe System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning types of information it redacted in the Discovery Request System.

37.     The specific types of information about IBM's Mainframe System that You or anyone acting on Your behalf did not redact, or attempt to redact, in communications between You and Winsopia made through the Discovery Request System, including information contained in compiler output files (*e.g.*, compiler listings and load modules) generated using IBM's Mainframe System.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning types of information it did not redact in the Discovery Request System.

38.     Winsopia "stubs" and how they were used to develop the Accused Instrumentality. *See, e.g.*, LZ0283253.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning use of "Winsopia stubs." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's general practices, policies and procedures concerning the use of "Winsopia stubs" in user load modules.

39.     **The review of responses or potential responses by Winsopia to requests by You for information relating to IBM's Mainframe System, including such review conducted by attorneys or non-attorneys.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. In particular, LzLabs notes that the Court has already rejected IBM's attempt to seek this type of information, except to the extent "provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning Winsopia's proposed responses that were reviewed by LzLabs employees as part of the clean room and DR system and attorney communications provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system. LzLabs will not be providing a witness to testify concerning attorney-client communications except to the extent previously set forth by the Court.

40.     **Your communications with attorneys who reviewed Winsopia's communications to You relating to IBM's Mainframe System, including with attorneys who reviewed requests and responses made through the Discovery Request System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. In particular, LzLabs notes that the Court has already rejected IBM's attempt to seek this type of information, except to the extent "provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning Winsopia's proposed responses that were reviewed by LzLabs employees as part of the clean room and DR system and attorney communications provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system. LzLabs will not be providing a witness to testify concerning attorney-client communications except to the extent previously set forth by the Court.

41.     Any policies, procedures, or restrictions that were in place governing communications between You and Winsopia, including any Code of Conduct (such as that referenced in Your response to IBM's Interrogatory No. 7).

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks testimony regarding, without limitation, every factual item concerning the policies, procedures, or restrictions encompassed by the Topic, on which LzLabs has produced a substantial volume of documents. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the policies, procedures, or restrictions in place governing communications between LzLabs and Winsopia, including the Code of Conduct.

42.     Any instances in which policies, procedures, or restrictions governing communications between You and Winsopia, including any Code of Conduct (such as that referenced in Your response to IBM's Interrogatory No. 7), were violated or not followed, whether intentionally or unintentionally, including when the violation occurred, the participants in the violation, the nature of the violation, the consequences of the violation, and Your efforts to cure any violation.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any instances in which policies, procedures, or restrictions governing communications between You and Winsopia, including the Code of Conduct, were violated or not followed.

43.     Any instances in which employees of LzLabs accessed or had access to (including remote access) Winsopia's computers, data storage devices, network, or the Winsopia Mainframe, including instances in which employees of LzLabs were placed on secondment to Winsopia.

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks testimony regarding, without limitation, every factual item concerning the "instances" encompassed by the Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning access by employees of LzLabs to Winsopia's computers, data storage devices, network, or the Winsopia Mainframe, including instances in which employees of LzLabs were placed on secondment to Winsopia.

44.     Any instances in which employees of LzLabs accessed or had access to Winsopia's physical premises, including instances in which employees of LzLabs were placed on secondment to Winsopia.

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to this Topic as overbroad and unduly burdensome because each and every "instance" in which an LzLabs employee "accessed or had access to" Winsopia's "physical premises" far exceeds the bounds of relevant discovery. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

45.     **Any training or guidance provided to employees of Winsopia or LzLabs on compliance with the policies, procedures, or restrictions governing communications between You and Winsopia, including any training or guidance relating to the Clean Room Process or the Discovery Request System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. In particular, LzLabs notes that the Court has already rejected IBM's attempt to seek this type of information that is privileged, except to the extent "provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning training or guidance provided to employees of Winsopia or LzLabs concerning the Code of Conduct and attorney communications provided to LzLabs regarding Winsopia's proposed responses as part of the clean room and DR system. LzLabs will not be providing a witness to testify concerning attorney-client communications except to the extent previously set forth by the Court.

46.     **Any procedure employed by You or Winsopia to remove IBM code from Winsopia's responses to You in connection with the Clean Room Process or Discovery Request System, including the "scrubbing" procedure referenced in Your July 6, 2023 response to IBM's Interrogatory No. 7.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the procedure to "scrub" object code in Winsopia's responses as part of the Discovery Request System as described in response to IBM's Interrogatory No. 7.

47.     The procedures by which "developers engaged by LzLabs would independently review [any] Winsopia Response for compliance with the Code of Conduct," as stated in Your July 6, 2023 response to IBM's Interrogatory No. 7.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning procedure for review by developers of Winsopia responses for compliance with the Code of Conduct, as described in response to IBM's Interrogatory No. 7.

48.     Your corporate relationship with Texas Wormhole, including:

a.     Your corporate ownership of or affiliation with Texas Wormhole, including through a shared parent;

b.     Your ability to formulate, direct, or control Texas Wormhole's operations, management, or policies.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the corporate relationship between LzLabs and Wormhole and any ability of LzLabs to formulate, direct, or control Texas Wormhole's operations, management, or policies.

49.     **The April 17, 2012 Wormhole Software Development Agreement referenced in Your July 6, 2023 response to IBM's Interrogatory No. 5, including the software development services that Texas Wormhole provided You in connection with that agreement, and Your role in directing or overseeing those software development services.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. LzLabs objects to this Topic to the extent it calls for legal conclusions or premature disclosure of an expert opinion. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the circumstances surrounding the formation of the Wormhole Software Development Agreement referenced in LzLabs's July 6, 2023 response to IBM's Interrogatory No. 7, the nature of the services provided by Wormhole to LzLabs thereunder, and the nature of LzLabs's role directing or overseeing those software development services.

50.     **Texas Wormhole's role in the development of the SDM, including the specific aspects of the SDM on which Texas Wormhole worked, the specific work that Texas Wormhole performed on those aspects of the SDM, when that work was performed, and by whom that work was performed.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the nature of Texas Wormhole's role in the

31

development of the SDM, including the types of project on which Texas Wormhole worked and associated time periods and individuals.

**51.     Reverse engineering, reverse assembling, breakdown, decompilation, or deconstruction of IBM's Mainframe System (in whole or in part) conducted by Texas Wormhole or at Texas Wormhole's direction.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning any activity encompassed by this Topic. LzLabs objects to the phrases "reverse engineering," "reverse assembling," "breakdown," "decompilation," or "deconstruction" as calling for a legal conclusion and a premature disclosure of an expert opinion.  LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the efforts by Winsopia to observe, study or test the functioning of customer applications to determine the ideas and principles underlying the interfaces between those customer applications and the programs licensed from IBM UK under the ICA in relation to LzLabs's efforts to develop its interface between the customer applications and the Accused Instrumentality.

**52.     Your communications with Texas Wormhole concerning (a) the Accused Instrumentality, (b) IBM, (c) the Winsopia Mainframe, and/or (d) IBM's Mainframe System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every communication with Texas Wormhole on the enumerated topics, which include LzLabs's primary product, in addition to IBM and IBM's

Mainframe System. Given the nature of LzLabs's business concerning the SDM, a product designed to be compatible with customer applications that run on a mainframe, these broadly framed categories essentially touch on the majority or entirety of LzLabs's business and go well beyond what is relevant to this litigation. LzLabs has already produced a substantial volume of communications between LzLabs and Wormhole. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

**53.     The role played by each Former IBM Employee in the development of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning work performed by any person who was employed by or contracted to work with IBM or any IBM-affiliated entity, and whose employment or contract with IBM or any IBM-affiliated entity ceased. LzLabs has already produced a substantial volume of documents concerning the development of the SDM. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

**54.     The document entitled "CICS Control Blocks" (LZ0379740–LZ0380754), including the creation of that document, the specific source(s) of the information contained in that document, the revision history of that document (both earlier and later versions), and how that document was used in the development of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. Subject to and without waiver of the foregoing general and specific objections, LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the document entitled "CICS Control Blocks" (LZ0379740–LZ0380754), including its creation, source(s), revision history, and use, if any.

55.     **The identity, contents, and use of any materials obtained by the Former IBM Employees in connection with their employment with IBM and still possessed by those Former IBM Employees while employed by You, Winsopia, Texas Wormhole, or any of Your affiliates, including how such materials were used in the development of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, every factual item concerning material obtained during employment with IBM and retained by any person who was employed by or contracted to work with IBM or any IBM-affiliated entity, and whose employment or contract with IBM or any IBM-affiliated entity ceased. LzLabs has already produced a substantial volume of documents concerning the development of the SDM. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

56.     **Your knowledge of the confidentiality obligations that any Former IBM Employees owed to IBM at the time they were employed by You, Winsopia, Texas Wormhole, or any of Your affiliates.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding any employee of LzLabs, Winsopia, Wormhole or LzLabs's affiliates who was employed by or contracted to work with IBM or any IBM-affiliated entity, and whose employment or contract with IBM or any IBM-affiliated entity ceased. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

57.     **Any employment agreement and/or any confidentiality agreement between each Former IBM Employee and LzLabs or Winsopia.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding any individual who was employed by or contracted to work with IBM or any IBM-affiliated entity, and whose employment or contract with IBM or any IBM-affiliated entity ceased. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer on this Topic.

58.     **The marketing and advertising of the Accused Instrumentality, including the entities involved in marketing and advertising the Accused Instrumentality, the countries where the Accused Instrumentality has been advertised or marketed, and the entities to whom the Accused Instrumentality has been advertised or marketed.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs objects to the extent the Topic requests testimony on every act of LzLabs "marketing and advertising" as overly broad, unduly burdensome, and not proportionate to the needs of the case. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

59.     **Your marketing statements concerning the performance of the Accused Instrumentality, including the factual basis for those marketing statements.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic as it concerns the word "performance" because, as used here, it is vague and ambiguous. LzLabs objects to the Topic as overbroad to the extent it seeks testimony concerning LzLabs marketing statements other than those made the subject of IBM's claims in this lawsuit. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-

privileged, factual information concerning LzLabs's marketing statements concerning the Accused Instrumentality, including their general factual bases, to the extent made the subject of IBM's claims in this lawsuit.

**60.     Your marketing statements concerning the purported interchangeability of the Accused Instrumentality and IBM's Mainframe System, including the factual basis for those marketing statements.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic as overbroad to the extent it seeks testimony concerning LzLabs marketing statements other than those made the subject of IBM's claims in this lawsuit. LzLabs objects to the phrases "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's marketing statements concerning the Accused Instrumentality, including their general factual bases, to the extent made the subject of IBM's claims in this lawsuit.

**61.     Your marketing statements concerning the ability of the Accused Instrumentality to process customer applications written for IBM's Mainframe System, including the extent to which the Accused Instrumentality can process those applications without change, including the factual basis for those marketing statements.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic as overbroad to the extent it seeks testimony concerning LzLabs marketing statements other than those made the subject of IBM's claims in this lawsuit. LzLabs objects to the phrases "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's marketing statements concerning the Accused Instrumentality, including their general factual bases, to the extent made the subject of IBM's claims in this lawsuit.

**62.     The benefits or advantages of using the Accused Instrumentality versus IBM's Mainframe System, including such benefits or advantages (*e.g.*, cost savings) that You advertise or market to customers or potential customers, and including the amount of IBM**

**Mainframe System usage (*e.g.*, MIPS or any other measure of usage) that LzLabs' customers have replaced.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to the extent this Topic calls for information outside of LzLabs's possession, custody, or control. LzLabs objects to the phrases "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. LzLabs objects to the Topic as overbroad to the extent it seeks testimony concerning LzLabs marketing statements other than those made the subject of IBM's claims in this lawsuit. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's marketing statements concerning the Accused Instrumentality, including their general factual bases, to the extent made the subject of IBM's claims in this lawsuit.

63.   **Your understanding of the reasons that customers or potential customers have or have not decided to use the Accused Instrumentality over IBM's Mainframe System.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic as vague, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding every third party to which LzLabs has marketed the Accused Instrumentality. LzLabs objects to the phrases "IBM's Mainframe System" and "Accused Instrumentality" as set forth above in Global Objections 10 and 11, respectively. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer about this Topic.

64.   **Your efforts to sell, offer to sell, license, offer to license, or otherwise commercialize the Accused Instrumentality to entities within or outside of the United States, including the identity of such entities, Your interactions with those entities, and the dates of those interactions.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs objects to the extent the Topic requests testimony on every act in which LzLabs "commercialized" the Accused Instrumentality as overly

broad, unduly burdensome, and not proportionate to the needs of the case. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

65.    Your "exploratory efforts to engage [certain] companies as potential customers in the United States," as referenced in Your July 6, 2023 response to IBM's Interrogatory No. 9, including Your specific interactions with each of these entities in the United States, the dates of such interactions, and Your understanding of why such efforts did not result in sales of the Accused Instrumentality.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the above-referenced exploratory efforts, including its understanding, if any, of why no sales resulted.

66.    The "certification process" described in Your July 6, 2023 response to IBM's Interrogatory No. 9, including what the process entails, the purpose of the process, and Your use of the process with specific companies.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the above-referenced certification process, including what the process entails, the purpose of the process, and use of the process as referenced in response to IBM's Interrogatory No. 9.

**67.     Any studies or assessments of customer satisfaction, value, demand, or feedback regarding the Accused Instrumentality, including without limitation any suggestions, requests, complaints, correspondences, statements or testimonials.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs objects to this Topic as overbroad to extent it seeks testimony concerning, for example, every "assessment," "suggestion," "request," or "correspondence" concerning the Accused Instrumentality because it is overbroad, unduly burdensome, vague, and ambiguous. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any studies or formal assessments of customer satisfaction, value, demand, or feedback regarding the Accused Instrumentality.

**68.     All facts and circumstances concerning the market, demand, and any competition (with IBM or any other third party) for the Accused Instrumentality, including all market studies, analyses, and reports commissioned or obtained by defendants concerning the Accused Instrumentality or IBM's Mainframe System.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs objects to this Topic as overbroad to extent it seeks testimony concerning every "fact[] and circumstance[] concerning the market, demand, and any competition (with IBM or any other third party) for the Accused Instrumentality" because it is overbroad, unduly burdensome, vague, and ambiguous. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer concerning this Topic.

69.   **Any partnership You have or have had with Swisscom, including for example how You migrated Swisscom's "entire mainframe workload to the cloud," any compensation You or Swisscom received for such work, and any business arrangement with Swisscom.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to this Topic as overbroad to extent it seeks testimony concerning "any partnership" or "any business arrangement" with Swisscom beyond any such partnership or business arrangement concerning the Accused Instrumentality. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's migration of Swisscom's mainframe workload and any compensation from Swisscom for the migration.

70.   **The sales history of the Accused Instrumentality, including the countries where the Accused Instrumentality has been sold or licensed, the identity of the customers to whom  the Accused Instrumentality has been sold or licensed, and the revenues that LzLabs has received from sales or licenses of the Accused Instrumentality on a per-customer basis.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs objects to the Topic to the extent it seeks every fact related in any way to the "sales history of the Accused Instrumentality" because it is overbroad and unduly burdensome. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the sales history of the SDM, including the countries where the SDM has been sold or licensed, the identity of the customers to whom the SDM has been sold or licensed, and the revenues that LzLabs has received from sales or licenses of the SDM on a per-customer basis.

71.     **The cost of the research and development of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing objections, LzLabs responds as follows: LzLabs will designate a witness to provide the approximate total cost of the research and development of the SDM.

72.     **Defendants' profit margin and costs associated with the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing objections, LzLabs responds as follows: LzLabs will designate a witness to provide the approximate profit margin, if any, and approximate total cost associated with the SDM.

73.     **Market and financial analyses of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "market and financial analyses" as vague and ambiguous. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer concerning this Topic.

74.     **Sales, revenue, and cost forecasts for the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning sales, revenue, and cost forecasts for the SDM.

75. **The pricing of the Accused Instrumentality, including how prices are set, price structure, changes in pricing, discounts, and pricing policies.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the pricing of the SDM, including how prices are set, price structure, changes in pricing, discounts, and pricing policies.

76. **Promotional, sales, and marketing activities with respect to the Accused Instrumentality, including discounts and/or other incentives offered for the lease or purchase of the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to this Topic as overbroad and unduly burdensome as it concerns all "[p]romotional, sales, and marketing activities with respect to the Accused Instrumentality," beyond such statements made the basis of IBM's claims. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the promotional, sales, and marketing activities with respect to the SDM, including discounts or other incentives offered for the lease or purchase of the SDM, if any, to the extent they relate directly to marketing statements IBM has claimed to be false or misleading.

77. **The information in LzLabs' audited and unaudited financial statements.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic because it does not "describe with reasonable particularity the matter for examination," as required by Rule 30(b)(6). LzLabs further objects to this Topic as overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks discovery regarding, without limitation, all of the information reflected in LzLabs's "audited and unaudited financial statements" regardless of its relevance to this litigation. Subject to and without waiver of

the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer concerning this Topic.

**78.    Your knowledge of the Patents-in-Suit prior to the date this lawsuit was filed, including when You first became aware of the Patents-in-Suit, how you first became aware of the Patents-in-Suit, and who first made You aware of the Patents-in-Suit.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any knowledge of the Patents-in-Suit prior to the date this lawsuit was filed, including when it first became aware of the Patents-in-Suit, how it first became aware of the Patents-in-Suit, and who first made it aware of the Patents-in-Suit.

**79.    Your policies or practices regarding patent clearances, right-to-use opinions, or other mechanisms to avoid Your infringement of the Patents-in-Suit.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any of policies or practices regarding patent clearances, right-to-use opinions, or other mechanisms to avoid infringement of the Patents-in-Suit.

**80.    Your policies, practices, and procedures for evaluating third-party patents for purposes of determining whether any products or services manufactured, developed, used, sold, or offered for sale by You may infringe such patents.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-

privileged, factual information concerning any policies, practices, and procedures for evaluating third-party patents for purposes of determining whether any products or services manufactured, developed, used, sold, or offered for sale infringe such patents.

81.     **Any patent and technology licenses, including settlement agreements, covering or comparable to the Accused Instrumentality, accused features of the Accused Instrumentality, or subject matter of the Patents-in-Suit.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs objects to the phrase "comparable to" as an undefined terms subject to various interpretations and, therefore, vague and ambiguous. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning any patent and technology licenses, including settlement agreements, covering or comparable to the Accused Instrumentality, accused features of the Accused Instrumentality, or subject matter of the Patents-in-Suit.

82.     **The factual basis for Your contention, if any, that You have not misappropriated IBM's trade secrets, including any contention that you have not willfully misappropriated IBM's trade secrets.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

44

83.     The factual basis for Your contention, if any, that IBM's asserted trade secrets are not protectable under the law, including any contention that they lack independent economic value, that IBM failed to take reasonable measures to protect their secrecy, or that the asserted trade secrets were publicly known at the time of Your acquisition, disclosure, or use of any of that information.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

84.     The factual basis for Your contention, if any, that the clean room process was effective to prevent transmission of IBM's trade secrets from Winsopia to You.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to the clean room process. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to the clean room process.

85.     **The factual basis for Your contention, if any, that Winsopia's analysis of IBM's Mainframe System, disclosure of information about IBM's Mainframe System to You, and the acquisition of such information by You, were permitted by any law, including the United Kingdom's Copyright Designs and Patents Act of 1988, Directive 2009/24/EC of the European Parliament and of the Council of 23 April 2009 on the legal protection of computer programs, and the Council Directive 91/250/EEC of 14 May 1991 on the legal protection of computer programs.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

86.     **The factual basis for Your contention, if any, that Your analysis of IBM's Mainframe System was permitted by any law, including the United Kingdom's Copyright Designs and Patents Act of 1988, Directive 2009/24/EC of the European Parliament and of the Council of 23 April 2009 on the legal protection of computer programs, and the Council Directive 91/250/EEC of 14 May 1991 on the legal protection of computer programs.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs further objects that, given IBM's unwillingness or inability to provide LzLabs with a specification of the trade secrets it claims LzLabs misappropriated, this Topic is premature, unduly burdensome, and harassing. LzLabs objects to the phrase "IBM's Mainframe System" as set forth above in Global Objection 10. Subject to and without waiver of the foregoing general and

specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

**87.     The factual basis for Your contention, if any, that You have not infringed any of the Patents-in-Suit.**

<u>**Objection and Response:**</u>

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to its non-infringement of the Patents-in-Suit. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to its non-infringement of the Patents-in-Suit.

**88.     The factual basis for Your contention, if any, that any of the Patents-in-Suit are invalid.**

<u>**Objection and Response:**</u>

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions and expert opinions. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to the invalidity of the Patents-in-Suit. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

**89.     The factual basis for Your contention, if any, that there are acceptable non-infringing alternatives to the Patents-in-Suit that can be used with the Accused Instrumentality, whether any such non-infringing alternative has been implemented, and the cost of implementing any such non-infringing alternative.**

<u>**Objection and Response:**</u>

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity.

LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs further objects to this Topic to the extent it would call for conclusions and expert opinions. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to acceptable non-infringing alternatives to the Patents-in-Suit that can be used with the Accused Instrumentality, whether any such non-infringing alternative has been implemented, and the cost of implementing any such non-infringing alternative. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to acceptable non-infringing alternatives to the Patents-in-Suit that can be used with the Accused Instrumentality, whether any such non-infringing alternative has been implemented, and the cost of implementing any such non-infringing alternative.

90.     **The factual basis for Your contention, if any, that you have not falsely advertised the Accused Instrumentality, including any contention that all marketing statements You made concerning the Accused Instrumentality were true, correct, and not misleading to customers.**

**<u>Objection and Response:</u>**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic to the extent it would call for legal conclusions. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. LzLabs objects to this Topic as overbroad and unduly burdensome as it concerns "all marketing statements You made concerning the Accused Instrumentality," beyond marketing statements made the basis of IBM's claims. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to the truthfulness of its marketing statements that IBM has claimed to be false or misleading. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to LzLabs's marketing statements.

91.     The factual basis for each of Your "Affirmative Defenses" in this action: (1) "Laches and Statute of Limitations (Trade Secrets)"; (2) "Estoppel and Collateral Estoppel (Trade Secrets)"; (3) "Acquiescence"; (4) "Noninfringement"; (5) "Invalidity"; (6) "Prosecution History Estoppel and Disclaimer"; (7) "Marking"; (8) "Statute of Limitations  (Patents)"; (9) "Single Recovery (Patents)"; (10) "License"; (11) "No Costs"; (12) "Truth"; (13) "Opinion or Puffery"; (14) "Freedom of Speech"; (15) "Lack of Misleading Effect"; (16) "Lack of Substantial Effect on Interstate Commerce"; (17) "Laches and Statute of Limitations (Lanham Act)"; (18) "No irreparable harm"; (19) "Failure to State a Claim"; (20) "Contractual Limitations"; (21) "Failure to Comply with Binding Exclusive Jurisdiction Clause"; (22) "Single Recovery (All Claims)"; and (23) "Claim Preclusion and Issue Preclusion."

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as seeking legal conclusions to the extent it seeks a lay witness to testify concerning, and therefore have legal knowledge of the elements of, various legal affirmative defenses. LzLabs objects to the extent certain of these subtopics would call for expert opinions. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to IBM's lack of entitlement to relief against LzLabs. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to the stated legal affirmative defenses.

92.     The factual basis for Your contention, if any, that IBM is not "entitled to any relief whatsoever," D.I. 42 at 55, including, for example, Your contention that IBM is not entitled to damages as a result of Your misappropriation of IBM's trade secrets.

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity.

LzLabs further objects to this Topic as seeking legal conclusions to the extent it seeks a lay witness to testify concerning IBM's lack of entitlement to legal "relief." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to IBM's lack of entitlement to legal relief. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to IBM not being entitled to injunctive relief.

**93.     The factual basis for Your contention, if any, that IBM is not entitled to injunctive relief.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs further objects to this Topic as seeking legal conclusions to the extent it seeks a lay witness to testify concerning IBM's lack of entitlement to "injunctive relief." Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information related to IBM's lack of entitlement to injunctive relief. LzLabs will not designate a witness for this Topic to testify about any understanding or meaning of, legal conclusions about, or contentions related to IBM not being entitled to injunctive relief.

**94.     The non-custodial data repositories available for use by LzLabs' employees, including the types of information regularly stored in those data repositories.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to this Topic as unduly burdensome and, to the extent it is not, cumulative in the that the parties have already disclosed this information in their Disclosures Pursuant to the Amended Order Regarding E-Discovery on July 24, 2023. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

95.     **The data and/or document repositories that You searched in connection with**

**IBM's Requests for Production in this Action.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to this Topic as unduly burdensome and, to the extent it is not, cumulative in the that the parties have already disclosed this information in their Disclosures Pursuant to the Amended Order Regarding E-Discovery on July 24, 2023. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs is willing to meet and confer regarding this topic.

96.     **Your efforts to preserve potentially relevant information in connection with**

**this lawsuit, including the date on which you issued any litigation hold notice.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs further objects to this Topic to the extent it seeks information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, protection, or immunity. LzLabs objects to the phrase "potentially relevant information" insofar as it would require a lay witness to reach a legal conclusion concerning legal relevance. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a witness to testify at a reasonable level of detail as to non-privileged, factual information concerning the preservation of its documents and the date on which a litigation hold notice was issued.

97.     **The organizational structure and personnel involved in each of Your business**

**units, departments, divisions, or other entities associated with the research, development,**

**manufacture, sale, and/or marketing relating to the Accused Instrumentality.**

**Objection and Response:**

LzLabs incorporates by reference its Global Objections as if fully set forth herein. LzLabs objects to the Topic as overbroad and unduly burdensome because it would require testimony concerning every person in the history of the company "involved in" any business unit, department, or division of the company that was ever "associated with" research, development, manufacture, sale, or marketing of the SDM. LzLabs further objects to the phrase "other entities" as vague and, depending on its meaning, overbroad. LzLabs objects to the phrase "Accused Instrumentality" as set forth above in Global Objection 11. Subject to and without waiver of the foregoing general and specific objections, LzLabs responds as follows: LzLabs will designate a

witness to testify at a reasonable level of detail as to non-privileged, factual information concerning LzLabs's organizational structure and the LzLabs personnel involved with regard to the development and marketing of the SDM.